No. 17,279.

OLSON MANUFACTURING CO. *v.* ROBERTS ET AL.

No. 17,280.

OLSON MANUFACTURING CO. *v.* POITZ ET AL.

No. 17,281.

OLSON MANUFACTURING CO. *v.* BAUMGARTNER ET AL.

(280 P. [2d] 433)

Decided February 21, 1955.

Mr. DAYTON DENIOUS, Mr. ROBERT G. SMITH, for plaintiff in error.

Mr. DAVID J. MILLER, Mr. MELVIN DINNER, Mr. RICHARD McKINLEY, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

THE Olson Manufacturing Company, an Idaho corporation, is plaintiff in error in four cases pending in this Court, three of which, namely the Olson Manufacturing Company v. Roberts, et al., the Olson Manufacturing Company v. Poitz, et al., and the Olson Manufacturing Company v. Baumgartner, et al., were pleaded separately, but were consolidated for trial and are so presented here for disposition. It is stated that another pending case, No. 17,251, the Olson Manufacturing Company v. Corsentino, et al., is so similar and nearly identical as to be included with these consolidated cases for disposition. Our determination in this one opinion applies to all of the cases enumerated except as to possible names, dates and amounts involved; however, since our conclusion is to affirm the judgments, the material matters are reflected in the judgment and are of no present concern.

The Olson Manufacturing Company, at all times involved, had manufactured so-called beet harvester machines for the Kiest Beet Harvester Company, a Utah corporation, according to specifications. The Platte Valley Motor Company, located at Brighton, Colorado, was a dealer in automobiles in 1947 and was desirous of taking on new lines of farm equipment. During that year,

the Kiest Company conducted a farm machinery caravan; one of its machines passed through Brighton; and Platte Valley became interested in handling this particular line of farm equipment and obtained a dealer's franchise from the Kiest Company about March of 1947. Prior to this time the Olson company had manufactured machines for the Kiest company in 1946 and still had a number of such machines on hand in the summer of 1947, some of which were repossessions. About August 1, 1947, H. A. Agee, vice-president and general manager of the Olson Manufacturing Company called on Platte Valley at Brighton and found that Platte Valley already was handling the Kiest machines and he then conferred with Mr. Cherry, president of the Platte Valley Motor Company, and discussed tentative arrangements regarding the handling of these beet harvester machines that Olson had on hand. Apparently an agreement was reached to be confirmed by letter from the Olson company, which was later in the form of a letter to Platte Valley with enclosed contracts for Platte Valley's approval and signature, and when so approved by Platte Valley and returned to Olson, Olson would execute the contracts and return a copy to Platte Valley. Accordingly this was done, and the transmittal letter and the contract are exhibits in the present case, to which reference hereinafter will be made. Machines were sold to various beet farmers in the locality of Brighton and in every instance here concerned, wholly failed to do the beet harvesting for which they were purchased. The purchasers, and those interested in the purchase, are now defendants in error by virtue of writs of error procured by Olson from this Court to review judgments obtained against it by defendants in error as plaintiffs in the trial court, where plaintiffs in the several complaints, joined both Platte Valley Motor Company and the Olson Manufacturing Company as defendants, and the complaints revealed that plaintiffs were in doubt as to whether, in making the sale and collecting the purchase price, Platte Valley

was acting in its own behalf or as agent for Olson company in the alleged misrepresentations and warranties made to plaintiffs as purchasers of the machines; and prayed for damages for the breach of warranty of fitness and merchantability; and the damages claimed, in substance, was the difference between the alleged junk value of the machine of $50.00 and the approximate purchase price of $3,000.00 plus additional itemized amounts for labor, loss of sugar content, loss of beets in the field and repairs.

Olson company answered denying liability; further denied that plaintiffs made any purchases from it; and that the Platte Valley Motor Company was, or acted as, its agent at any time.

Platte Valley Motor Company answered generally denying the material allegations; denied making misrepresentations of any kind to any of the plaintiffs; that any representation made by it was merely "puffing" and sales talk; and that such representations were not relied upon by plaintiffs to their injury. It further alleged that it was acting as agent and dealer for the Olson Manufacturing Company; and that the acts and representations of Platte Valley were made with full knowledge, authorization and consent of that Company; that all of the acts and doings of the Platte Valley Company were within the scope of authority of their agency and were done for and on behalf of the Olson Company and authorized and ratified by it; prayed that if it be found to be liable to plaintiffs that the court find and determine that the liability is of the Olson Company, and if judgment be returned against Platte Valley that Platte Valley have judgment against its codefendant in the amount of any judgment entered against Platte Valley; and as a final prayer, that the complaint be dismissed, and that it be awarded judgment against the Olson Manufacturing Company in the sum of $17,174.00.

The record discloses many pleadings, the details of which and the rulings on motions directed to such plead-

ings, we deem unnecessary to discuss when, in fact, the parties went to trial on the three complaints and two counterclaims filed by Platte Valley in two instances where sale had been made on a part payment and a note and chattel mortgage given to secure the balance. The Olson Company unsuccessfully moved for dismissal at the close of plaintiffs' case and at the close of all the evidence. The case was tried to a jury, which returned verdicts, on which judgments were entered against the Olson Manufacturing Company, but not against Platte Valley Motor Company, for the full amount of $2,999.00; it returned no verdict on Platte Valley's counterclaim; and in addition thereto, it answered special interrogatories as to the value of the machines, and its answer was that the machines for which the notes were given were worthless; thereupon the court dismissed Platte Valley's counterclaims on the theory there was no consideration for the notes.

The Olson Company's contention then and now, was that the party selling and warranting the machines to the purchasers was Platte Valley; and since no warranty was made by Olson and no notice given to Olson of a breach of warranty, there is no liability on its part.

In brief, the facts appear as follows: The beet harvester machine consisted of two units, namely, two units each operated separately from the other, and required two tractors to pull them. The first unit was a topper and the second was a puller and lifter-loader for two rows of topped beets. Each group of farmers, who were plaintiffs and now defendants in error, purchased a two-unit harvester from Platte Valley for $3,493.50, $3,238.50, $3,213.00 and $3,516.00, respectively, and Platte Valley represented that the beet harvesting machinery would harvest from 80 to 160 tons of beets per day; that the Olson Company would have men in the territory to make the machines work; that the representative of Platte Valley stated that Platte Valley would absolutely guarantee the machines to do the work; and that Olson would stand behind it and

see that they worked. Every attempt was made to make the beet harvesters work, but all were complete failures, and the purchasers repeatedly told Platte Valley that the harvesters did not work, and also complained to two representatives of Olson Company. The purchasers all testified that the machines had no value whatever as beet harvesters; that where they were attempted to be used the beet tops were spoiled and could not be sold at any price; that the harvester left one-fifth of the beets in the field; that there was a three to five ton per acre difference between the yield on the use of hand labor and the yield obtained by the use of this machinery; that the purchasers experienced excessive repair bills on the machinery; that the delay caused a great loss in sugar content; and in all, they spent about a month attempting to make the harvesters operate successfully.

In the last analysis, the controlling question of fact to be determined by the jury was that of agency. The Olson Company contends that the machines were sold by them direct to Platte Valley, and that the sale was not conditional or on consignment. At this point it is to be noted that in the Corsentino case, No. 17,251, the trial court instructed the jury as a matter of law that Platte Valley was Olson's agent and in that case Olson offered no testimony; however, in the three consolidated cases, Olson presented testimony in an attempt to show that Platte Valley was not its agent. The record and the exhibits clearly refute Olson's contentions. It is our opinion, clearly supported by the record, that Olson created an agency, with Olson as consignor and Platte Valley as consignee with authority to sell as agent for Olson. The real nature of the transaction between the two was one of consignment as is evidenced by Olson's letter of August 4, 1947 to Platte Valley, which is as follows:

"We are enclosing herewith two Conditional Sale Contracts covering Kiest Beet Harvesters. One of these is for nine complete units, the other one is for the

machine purchased last fall by Blandin and Bohlander. You will notice the prices and terms are in line with our verbal agreement.

"We wish to supplement these contracts by further outlining additional terms which are as follows:

"(1)   Each machine is to be settled in full by you at the time you deliver same to your customer. Settlement to be in the amount of $2,400 for each complete harvesting outfit. The $100.00 additional cash discount is to be allowed after you have settled for all of the units.

"(2)   In the event you have not sold and settled for all of these units prior to September 20th, you are to immediately turn over to us any machines that we might wish to bring into Boise or ship elsewhere for sale, it being further understood that we may or may not want to take back all of the machines at that time. In the event that we do not take back all of the machines, it is understood and agreed that you will store the remainder for us at your place of business free of charge until such time as we can make disposition of them.

"I am enclosing a duplicate copy of this letter and would like for you to sign it in the space provided below and return it together with all four copies of each contract signed by an authorized officer of your corporation. Upon receipt of these signed copies, we will sign and return one copy for your files."

█   The "conditional sale contracts" mentioned in the letter are captioned "Dealer's Purchase Conditional Sale Contract and Trust Agreement." It is so poorly reproduced for this record that we will not attempt to set it out; however, the letter and the contracts taken together unmistakably show that Platte Valley was not obligated to pay for any machines shipped to it until it had sold them to customers. This is an indelible mark of a consignment. In whatever light the printed terms of the contract may appear, the letter hereinabove set out is a part of the contract between Olson and Platte Valley. Olson brought the machines to Platte Valley, some from

its plant and some from the territory involved. They were reconditioned by Olson at Platte Valley and Platte Valley was to pay Olson for the machines only if, and when, sold. Olson dictated and controlled the sale price and fixed the amount of the commission to be paid or to be retained by Platte Valley at the time of sale. Olson made arrangements for the sale and method of the sale; agreed to the reconditioning of the machines; specifically set out the method of remittance to it by Platte Valley; and further, in the case of unsold machines, it arranged for their storage and reserved the right to dispose of them elsewhere. Olson also consigned a store of parts to Platte Valley; and Olson's representative, Mr. Agee, admitted that Platte Valley was the consignee of the parts stored. The letter above set out shows that Olson was sending experienced mechanics to the area to recondition the machinery, and that its men did actually work on the machines until about December 1, when they abandoned the undertaking. All of this occurred between the parties before litigation arose and clearly discloses that the parties, through their representatives, treated the transaction as a consignment. In fact, Mr. Agee of Olson Company, according to an exhibit, wrote that the machines were sent to Platte Valley "more or less on a consignment basis." Olson Company provided and delivered a supply of literature, including a beet harvester folder, which was delivered to Platte Valley by Olson, and Platte Valley attempted to cover the territory with this literature for prospective purchasers. The jury found that Platte Valley was Olson's agent and it follows that upon this finding, all statements to the farmers by Platte Valley representatives concerning what the machines would do were warranties by Olson. Olson clearly stated in an exhibit, being a letter of August 2, 1947, that it would have men in the territory to make the machines work.

The Olson Company, of course, contends that it was not a seller; however, it argues that even if Platte Valley

was its agent, Platte Valley had no authority to make any warranties. The entire transaction in which Olson is involved discloses a seemingly ulterior motive to unload machines, which it knew would not work, on unsuspecting farmers. The evidence discloses that in 1946 Olson was threatened with law suits in Idaho on account of the failure of the machines to do the work which they were represented to perform. When it sold the machines, as here, on a warranty with knowledge of its imperfection, and collected the amounts paid by the purchasers, the transactions were colorable, to say the least.

▆▆▆ The Olson Company's position is taken to support its disclaimer by a claim of lack of authority to warrant on the part of Platte Valley. In fact, Platte Valley's warranties were in accordance with the Olson plan and ratified by the Olson Company. At any rate, any form of a disclaimer will not permit a seller to disclaim the known true nature of the article offered for sale. The disclaimer attempted to be relied upon by Olson Company is contained in the printed form of contract sent to Platte Valley. This was not made known to the buyer before the purchase was concluded, therefore the so-called disclaimer was not binding. Olson's contention that it received no notice of a breach of warranty is not supported by the record. During all of the period in which attempts were being made by Olson field men to make the machines do the work they were represented to perform, and for which they were sold, the representative farmers notified both Platte Valley and Olson of the failure of the machinery to harvest beets. Any question of notice was amply satisfied when Olson's vice-president acknowledge notice through Platte Valley of the demand for damages, and notice to Platte Valley and notice to Olson by the holding of a meeting of the farmers with the representatives of both companies and the sending of Olson's experts afterwards in an attempt to repair the machines, was complete satisfaction of the question of notice. The determination by the jury, on interrogatories,

that the machines were worthless, entitles the purchasers to recover the full amount paid as the purchase price. We have examined the instructions given by the court on ratification; the nature of implied warranties and notice; and find that there could be no supportable objections made thereto by Olson. The instructions were based on competent evidence and thereby the questions of fact were submitted to the jury for its determination.

The defendants in these cases were ably defended; all the features of the transactions were presented and submitted to the jury under proper instructions; the verdicts are amply supported by competent evidence; and the judgments based thereon should be, and are, affirmed. This applies to the judgments in three consolidated cases and the other pending case, No. 17,251, the Olson Manufacturing Company v. Charles Corsentino, et al.

Mr. Justice Moore dissents.

Mr. Justice Bradfield did not participate in the consideration of this case.